# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO
# Judge Robert E. Blackburn

Civil Case No. 08-cv-02781-REB

EDGAR DEWOND REED,

    Applicant,

v.

KEVIN MILYARD, and
THE ATTORNEY GENERAL OF THE STATE OF COLORADO,

    Respondents.

## ORDER ON APPLICATION FOR WRIT OF HABEAS CORPUS

**Blackburn, J.**

This matter is before me on the *pro se* **Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254** ("Application") [#2][1] filed on December 23, 2008, by Applicant Edgar Dewond Reed. Respondents have filed an Answer to Application for Writ of Habeas Corpus ("Answer") [#21]. I must construe the Application liberally because Applicant is not represented by an attorney. **See Haines v. Kerner**, 404 U.S. 519, 520 (1972); **Hall v. Bellmon**, 935 F.2d 1106, 1110 (10th Cir. 1991). However, I should not be an advocate for a **pro se** litigant. **See Hall**, 935 F.2d at 1110. After reviewing the pertinent portions of the record in this case including the Application, the Answer, and the state court record [#26], I conclude that the Application should be denied.

---

[1] "[#2] is an example of the convention I use to identify the docket number assigned to a specific paper by the court's electronic case filing and management system (CM/ECF). I use this convention throughout this order.

## I. BACKGROUND

Applicant and a co-defendant, Al Williams, were tried jointly for various offenses arising from the armed robbery of a bank by three men in Colorado Springs, Colorado, in July 2003. During the robbery, one of the perpetrators fired a shot at the ceiling and another shot toward the tellers but no one was injured. The perpetrators were seen running out of the bank toward a parking lot. A silver Cadillac subsequently was observed leaving the parking lot. One of the individuals who participated in the bank robbery, Calvin Clark, entered a plea agreement and testified against Applicant and co-defendant Williams.

Following a jury trial in case number 03CR4360 in the District Court of El Paso County, Colorado, Applicant and co-defendant Williams both were convicted of multiple offenses. Applicant specifically was found guilty of three counts of aggravated robbery, conspiracy to commit aggravated robbery, theft, menacing, theft over $15,000, three counts of felony menacing, and four counts of crime of violence with a deadly weapon. Applicant was acquitted of attempted first degree murder, attempted second degree murder, and one count of menacing. He was sentenced to a total term of forty-four years in prison.

While his direct appeal was pending before the Colorado Court of Appeals ("CCA"), Applicant filed a motion for a new trial alleging that a juror had agreed to a guilty verdict as a result of threatening behavior by other jurors. The CCA granted a limited remand to allow the trial court to rule on Applicant's motion for a new trial. On remand, the trial court held a nonevidentiary hearing and denied the motion for a new trial. The CCA then affirmed the judgment of conviction. **See People v. Reed**, No.

04CA2611 (Colo. App. Feb. 7, 2008) (unpublished decision) [#21-4]. On October 6, 2008, the Colorado Supreme Court denied Applicant's petition for writ of certiorari on direct appeal [#21-6].

Applicant asserts four claims in the instant Application. In his first claim, which is labeled "Jury Misconduct," Applicant contends that the trial court abused its discretion and committed reversible error by failing to conduct an evidentiary hearing on the motion for a new trial. Applicant's second claim is that the trial court committed constitutional error by refusing to sever his trial from the trial of co-defendant Williams. Applicant's third claim is that the trial court violated his due process right to a fair trial by permitting testimony and exhibits regarding an out-of-court identification that was unduly suggestive. Finally, Applicant contends in his fourth claim that the trial court violated his due process right to a fair trial by admitting co-defendant Williams' hearsay statements to a jailhouse informant.

## II. STANDARD OF REVIEW

Title 28 U.S.C. § 2254(d) provides that a writ of habeas corpus may not be issued with respect to any claim that was adjudicated on the merits in state court unless the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

I review claims of legal error and mixed questions of law and fact pursuant to 28

U.S.C. § 2254(d)(1).  **See Cook v. McKune**, 323 F.3d 825, 830 (10th Cir. 2003).  The threshold question I must answer under § 2254(d)(1) is whether Applicant seeks to apply a rule of law that was clearly established by the Supreme Court at the time his conviction became final.  **See Williams v. Taylor**, 529 U.S. 362, 390 (2000).  Clearly established federal law "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision."  **Id**. at 412.  Furthermore,

> clearly established law consists of Supreme Court holdings in cases where the facts are at least closely-related or similar to the case **sub judice**.  Although the legal rule at issue need not have had its genesis in the closely-related or similar factual context, the Supreme Court must have expressly extended the legal rule to that context.

**House v. Hatch**, 527 F.3d 1010, 1016 (10th Cir. 2008).

If there is no clearly established federal law, that is the end of my inquiry pursuant to § 2254(d)(1).  **See id**. at 1018.  If a clearly established rule of federal law is implicated, I must determine whether the state court's decision was contrary to or an unreasonable application of that clearly established rule of federal law.  **See Williams**, 529 U.S. at 404-05.

> A state-court decision is contrary to clearly established federal law if: (a) "the state court applies a rule that contradicts the governing law set forth in Supreme Court cases"; or (b) "the state court confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from [that] precedent."  **Maynard** [**v. Boone**], 468 F.3d [665,] 669 [(10th Cir. 2006)] (internal quotation marks and brackets omitted) (quoting **Williams**, 529 U.S. at 405).  "The word 'contrary' is commonly understood to mean 'diametrically different,' 'opposite in character or nature,' or 'mutually opposed.'"

4

> ***Williams***, 529 U.S. at 405 (citation omitted).

> A state court decision involves an unreasonable application of clearly established federal law when it identifies the correct governing legal rule from Supreme Court cases, but unreasonably applies it to the facts. ***Id***. at 407-08. Additionally, we have recognized that an unreasonable application may occur if the state court either unreasonably extends, or unreasonably refuses to extend, a legal principle from Supreme Court precedent to a new context where it should apply.

***House***, 527 F.3d at 1018.

My inquiry pursuant to the "unreasonable application" clause is an objective inquiry. ***See Williams***, 529 U.S. at 409-10. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather that application must also be unreasonable." ***Id***. at 411. "[A] decision is 'objectively unreasonable' when most reasonable jurists exercising their independent judgment would conclude the state court misapplied Supreme Court law." ***Maynard***, 468 F.3d at 671. "[O]nly the most serious misapplications of Supreme Court precedent will be a basis for relief under § 2254." ***Id***.

I review claims asserting factual errors pursuant to 28 U.S.C. § 2254(d)(2). ***See Romano v. Gibson***, 278 F.3d 1145, 1154 n.4 (10th Cir. 2002). Section 2254(d)(2) allows me to grant a writ of habeas corpus only if the relevant state court decision was based on an unreasonable determination of the facts in light of the evidence presented to that court. Pursuant to § 2254(e)(1), I must presume that the state court's factual determinations are correct and Applicant bears the burden of rebutting the presumption

by clear and convincing evidence. "The standard is demanding but not insatiable . . . [because] '[d]eference does not by definition preclude relief.'" **Miller-El v. Dretke**, 545 U.S. 231, 240 (2005) (quoting **Miller-El v. Cockrell**, 537 U.S. 322, 340 (2003)).

Finally, I "owe deference to the state court's *result*, even if its reasoning is not expressly stated." **Aycox v. Lytle**, 196 F.3d 1174, 1177 (10th Cir. 1999). Therefore, I "must uphold the state court's summary decision unless [my] independent review of the record and pertinent federal law persuades [me] that its result contravenes or unreasonably applies clearly established federal law, or is based on an unreasonable determination of the facts in light of the evidence presented." *Id*. at 1178. "[T]his 'independent review' should be distinguished from a full de novo review of the petitioner's claims." *Id*.

If a claim was not adjudicated on the merits in state court, and if the claim also is not procedurally barred, I must review the claim *de novo* and the deferential standards of § 2254(d) do not apply. **See Gipson v. Jordan**, 376 F.3d 1193, 1196 (10th Cir. 2004).

### III. ANALYSIS

1. Claim One

Applicant's first claim is labeled "Jury Misconduct." However, Applicant does not set forth in support of his first claim any allegations of juror misconduct. Instead, Applicant contends in support of his first claim only that the trial court abused its discretion and committed reversible error by failing to conduct an evidentiary hearing on the juror misconduct alleged in his motion for a new trial. As noted above, the trial court

6

did hold a nonevidentiary hearing at which the trial court determined an evidentiary hearing was not warranted.

Applicant alleged in the motion for a new trial that a juror had rendered her guilty verdicts due to threatening behavior from other jurors. According to the CCA, "[o]ne of the jurors submitted an affidavit, alleging that other jurors slammed a pen and books down in front of her, stared at her in an intimidating manner, and yelled at her. She further alleged that she felt threatened and coerced into finding [Applicant] guilty." [#21-4 at p.12.] After noting that co-defendant Williams had raised the same issue on appeal before another division, the CCA agreed with the rationale and conclusion of the other division that "an evidentiary hearing was not required because the trial court applied the proper legal standard of objectively analyzing the juror's affidavit and concluded the allegations did not constitute overt coercive acts." [#21-4 at p.12.]

Applicant fails to identify any clearly established federal law that requires a state court to hold an evidentiary hearing to investigate a claim of juror misconduct. "Due process means a jury capable and willing to decide the case solely on the evidence before it, and a trial judge ever watchful to prevent prejudicial occurrences and to determine the effect of such occurrences when they happen. Such determinations *may* properly be made at a hearing . . ." ***Smith v. Phillips***, 455 U.S. 209, 217 (1982) (emphasis added); ***see Tracey v. Palmateer***, 341 F.3d 1037, 1044-45 (9th Cir. 2003) (finding that clearly established federal law does not require state or federal courts to hold a hearing every time a claim of juror bias or misconduct is raised). In fact, Applicant is prohibited from using the testimony of a juror regarding internal jury

7

deliberations to impeach the verdict and obtain a new trial. *See Tanner v. United States*, 483 U.S. 107, 117 (1987) (stating that "the near-universal and firmly established common-law rule in the United States flatly prohibited the admission of juror testimony to impeach a jury verdict."). Therefore, the CCA's determination that Applicant was not entitled to an evidentiary hearing on his claim of juror misconduct cannot be contrary to or an unreasonable application of clearly established federal law because there is "no clear answer to the question presented." *Wright v. Van Patten*, 552 U.S. 120, 126 (2008) (per curiam). As a result, I find that Applicant's first claim must be dismissed.

   2. Claim Two

Applicant alleges in his second claim that the trial court committed constitutional error by refusing to sever his trial from the trial of co-defendant Williams. In his opening brief on appeal to the CCA, Applicant argued that he was entitled either to mandatory severance or, in the alternative, discretionary severance.

> [Applicant] argued that severance was mandatory because there was material evidence admissible against co-defendant Williams but inadmissible against himself, and that discretionary severance was appropriate because his defense was antagonistic to that of co-defendant Williams. The evidence admissible against Williams but not [Applicant] related to statements made by Williams to a jailhouse informant named Matthew Graves that implicated [Applicant].

[#21-1 at pp.32-33 (citations to record omitted).] Applicant argued that the defenses were antagonistic with respect to the source of the money used to purchase a vehicle on the day of the robbery.

The CCA noted that co-defendant Williams had raised the same issue in his

8

appeal, which was rejected by another division that "concluded that the trial court did not abuse its discretion in denying the motion to sever because Williams's defense was not antagonistic to [Applicant's] defense." [#21-4 at p.13.] The division considering Williams' appeal reasoned as follows in concluding the defenses were not antagonistic:

> Here, both defendants testified that [Applicant] purchased a $5,500 motorcycle and loaned [Williams] $8,000 to purchase a vehicle on the day of the crime. They both denied participation in the crime, and neither of them attempted to place blame on or implicate the other. And they similarly attacked [Calvin Clark's] testimony because he had named other persons as his accomplices in an initial police interview. Therefore, we conclude that [Williams'] defense was not antagonistic to [Applicant's] defense, even if the testimony about the loan to [Williams] was implausible.
>
> Further, the trial court gave limiting instructions concerning the burden of proof; that separate offenses were charged against each defendant; and that one or both of the defendants may or may not be found guilty as to any of the offenses charged.
>
> Accordingly, we discern no abuse of discretion by the trial court in denying [Williams'] motion to sever.

*People v. Williams*, No. 04CA2612 (Colo. App. Nov. 1, 2007) (unpublished decision) [#21-8 at pp.7-8]. In Applicant's appeal, the CCA agreed with the rationale of the division that considered co-defendant Williams' appeal and concluded that the trial court did not abuse its discretion in refusing to sever the trials. [*See* #21-4 at p.13.] The CCA did not address Applicant's argument that he was entitled to mandatory severance, an issue that was not raised by co-defendant Williams in his appeal. Therefore, to the extent Applicant relies on this mandatory severance argument, I must review the claim *de novo*. *See Gipson*, 376 F.3d at 1196.

9

"Whether the trial court erred in denying severance is generally a question of state law that is not cognizable on federal habeas appeal, for a criminal defendant has no constitutional right to severance unless there is a strong showing of prejudice caused by the joint trial." ***Cummings v. Evans***, 161 F.3d 610, 619 (10th Cir. 1998) (citation omitted); *see also **United States v. Lane***, 474 U.S. 438, 446 n.8 (1986) (stating that "misjoinder would rise to the level of a constitutional violation only if it results in prejudice so great as to deny a defendant his Fifth Amendment right to a fair trial."). Furthermore, Applicant must show real prejudice to establish a constitutional violation due to a failure to sever. *See **Fox v. Ward***, 200 F.3d 1286, 1293 (10th Cir. 2000). Even "'[m]utually antagonistic defenses are not prejudicial *per se*.'" ***Id.*** (quoting ***Zafiro v. United States***, 506 U.S. 534, 538 (1993)). To justify severance, "[t]he defenses truly must be mutually exclusive, such that the jury could not believe the core of one defense without discounting entirely the core of the other." ***United States v. Dirden***, 38 F.3d 1131, 1141 (10th Cir. 1994).

Applicant fails to demonstrate that he suffered any real prejudice as a result of the denial of his repeated motions to sever his trial from the trial of co-defendant Williams. With respect to the testimony of the jailhouse informant regarding co-defendant Williams' hearsay statements that were inadmissible against Applicant, that was not the only testimony that identified Applicant as one of the bank robbers. Calvin Clark, the third bank robber who had pled guilty to attempted aggravated robbery for his role in robbing the bank, also testified that Applicant and co-defendant Williams participated in the robbery. In addition, a police detective testified about statements

10

Applicant himself made to his cell-mate describing the bank robbery and his involvement in the bank robbery.

I also do not discern any real prejudice to Applicant based on the allegedly antagonistic defenses with respect to the source of the money used to purchase a vehicle on the day of the robbery. The testimony of a number of witnesses, including Applicant, indicated that the money for the vehicle was provided by Applicant and his girlfriend as well as co-defendant Williams and his girlfriend. Although it was not clear exactly how much money each of these four persons contributed, there was no dispute that Applicant and his girlfriend were the source of at least several thousand dollars of the $8,000 down payment for the vehicle in question. Therefore, because Applicant fails to demonstrate any real prejudice caused by the trial court's refusal to sever his trial from the trial of co-defendant Williams, I find that this claim also lacks merit and must be dismissed.

3. Claim Three

Applicant alleges in his third claim that the trial court violated his due process right to a fair trial by permitting testimony and exhibits regarding an out-of-court identification that was unduly suggestive. The out-of-court identification in question related to Applicant's Cadillac, which the prosecution argued was the get-away vehicle following the bank robbery. Applicant argued this claim as follows in his opening brief on appeal to the CCA:

> In this case, [Applicant's] due process rights were violated by the admission of testimony and photos relating to an out-of-court photo identification by Mr. Untiedt. Mr. Untiedt was called as a witness to describe a car thought to be the get-away car from the bank robbery. Outside the

11

courtroom, thirty minutes before testifying, Mr. Untiedt was showed [sic] photos of a single car, taken from different angles. He was asked if he recognized the vehicle.

This out-of-court, pretestimony identification of a very significant piece of evidence was impermissibly suggestive and created a substantial likelihood of misidentification for several reasons. First, during the year that ha[d] passed between the crime and the trial, Mr. Untiedt had not been contacted by law enforcement and was never shown any photographs or asked to identify any cars as being similar to the one he allegedly observed.

The identification procedure occurred immediately prior to testifying, and the photo array contained only photos of [Applicant's] car. [Applicant] objected on numerous grounds to the admission of the photos of his car and to the testimony about his car. He argued that it was impermissibly suggestive and lacked foundation. The court overruled [Applicant's] objection without making any further determinations. There [sic] court never addressed the impermissibly suggestive argument but rather simply allowed the testimony and photos to be presented to the jury. Sure enough, Mr. Untiedt described the car that he saw as being the car in the photographs. This evidence went to a key piece of evidence in the case against [Applicant], in a case where there was very little direct evidence connecting any defendant to the crime, thereby making a guilty verdict much more likely.

[#21-1 at pp.46-47.]

The CCA rejected Applicant's argument that the procedures for an out-of-court identification of a suspect also should apply to an out-of-court identification of the Cadillac.

"[T]he identification of an inanimate object . . . is not as crucial an element of the proof as is a direct identification of a defendant as the person who committed a crime." *People v. Hogan*, 114 P.3d 42, 51 (Colo. App. 2004). Accordingly, "the same constitutionally prescribed procedures used for identifying suspects do not apply to procedures used in identifying inanimate objects." *Id*.

12

> "[A]ny inadequacy in the procedures followed and the failure to use other procedures reasonably available are arguments that can be presented to the jury." *Id*. In short, defects in the procedure for an out-of-court identification of an inanimate object go to the weight of the evidence, not its admissibility. *Id*.

[#21-4 at p.14.]

It is clearly established federal law that an out-of-court identification may violate a defendant's constitutional right to due process if it is impermissibly suggestive and taints a subsequent in-court identification. **See Stovall v. Denno**, 388 U.S. 293 (1967), **overruled on other grounds by Griffith v. Kentucky**, 479 U.S. 314 (1987). However, "**Stovall** and its progeny do not require car line-ups. There is no authority holding that a defendant's due process right to reliable identification procedures extends beyond normal authenticity and identification procedures for physical evidence offered by the prosecution." **Johnson v. Sublett**, 63 F.3d 926, 932 (9th Cir. 1995). Therefore, because Applicant fails to identify any clearly established Supreme Court law extending his due process right to reliable identification procedures to the identification of physical evidence, this claim also lacks merit and must be dismissed.

4. Claim Four

Applicant finally claims that the trial court violated his due process right to a fair trial by admitting co-defendant Williams' hearsay statements. The hearsay statements to which Applicant objected were statements made by co-defendant Williams to jailhouse informant Matthew Graves that implicated both co-defendant Williams and Applicant in the bank robbery. The CCA determined that co-defendant Williams' hearsay statements to Matthew Graves properly were admitted as statements against

interest under Rule 804(b)(3) of the Colorado Rules of Evidence, an exception to the general rule prohibiting hearsay.

I note initially that Applicant does not contend the admission of co-defendant Williams' hearsay statements violated his rights under the Confrontation Clause. Therefore, I will consider Applicant's fourth claim solely in the context of a due process violation.

"[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." **Estelle v. McGuire**, 502 U.S. 62, 67-68 (1991). Therefore, "[h]abeas relief may not be granted on the basis of state court evidentiary rulings unless they rendered the trial so fundamentally unfair that a denial of constitutional rights results." **Mayes v. Gibson**, 210 F.3d 1284, 1293 (10th Cir. 2000); *see also* **Fox v. Ward**, 200 F.3d 1286, 1296-97 (10th Cir. 2000) (stating that, to justify habeas relief, a trial court's evidentiary error must be "so grossly prejudicial that it fatally infected the trial and denied the fundamental fairness that is the essence of due process").

"[B]ecause a fundamental-fairness analysis is not subject to clearly definable legal elements, when engaged in such an endeavor a federal court must tread gingerly and exercise considerable self restraint." **Duckett v. Mullin**, 306 F.3d 982, 999 (10th Cir. 2002) (internal quotation marks omitted). The Court's "[i]nquiry into fundamental unfairness requires examination of the entire proceedings." **Le v. Mullin**, 311 F.3d 1002, 1013 (10th Cir. 2002) (per curiam).

Based on my examination of the state court record, I cannot conclude that the trial court's admission of co-defendant Williams' hearsay statements to Matthew Graves that implicated himself and Applicant in the bank robbery rendered Applicant's trial fundamentally unfair. As noted above in the context of Applicant's second claim for relief, co-defendant Williams' hearsay statements were not the only testimony that specifically identified Applicant as one of the bank robbers. Calvin Clark, an admitted participant in the bank robbery, also testified that Applicant and co-defendant Williams participated in the bank robbery and there was testimony from a police detective regarding statements made by Applicant to his own cell-mate in which he confessed to committing the bank robbery.

Furthermore, counsel for co-defendant Williams strenuously attacked the credibility of Matthew Graves on cross-examination by demonstrating that he testified in exchange for a guilty plea to a reduced charge of simple robbery and a sentence of five years in one case, not being charged at all in a number of other robbery cases to which he had admitted involvement, and having his five-year sentence run concurrently with any sentence imposed in a pending aggravated assault case in Mississippi. Cross-examination of Matthew Graves also indicated that he actively sought to gather and provide information that would help him get a better deal in his own cases, and testimony from various witnesses, including Matthew Graves, indicated that he had access to papers in the possession of co-defendant Williams that could have been the source of his information rather than an actual confession from co-defendant Williams. Counsel for Applicant and co-defendant Williams also stressed these points in their closing arguments.

Because my examination of the entire proceedings does not demonstrate the trial court's admission of co-defendant Williams' hearsay statements to Matthew Graves rendered Applicant's trial fundamentally unfair, this claim also must be dismissed.

## IV. ORDERS

**THEREFORE, IT IS ORDERED** as follows:

1. That the *pro se* **Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254** [#2] filed on December 23, 2008, by Applicant Edgar Dewond Reed is **DENIED**;

2. That this case is **DISMISSED WITH PREJUDICE**; and

3. That there is no basis on which to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c).

DATED at Denver, Colorado, September 1, 2010.

BY THE COURT:

Robert E. Blackburn
United States District Judge